Welcome, you are in front of the First Division of the First District Appellate Court in the case of Byline Bank v. Bank of America, number 1-23-0927. My name is Terry Lab, and I'll be presiding today along with my colleagues, Justice Aurelia Kuczynski and Justice Cynthia Cobbs. What we tend to do is to give each other, each side, 15 minutes approximately, the first five minutes or so of which we will try to not interrupt you with any questions so you can get the thrust of your arguments out, and I would ask the appellant to reserve some time for rebuttal. Let me see if there's anything else. Okay, we're here ready for oral arguments, so let's hear from the appellant. Good afternoon, Your Honors. May it please the Court, my name is Catherine Wyler, and I represent Byline Bank in this appeal. I'd like to reserve five minutes of rebuttal time, please. No problem. And I invite the Court to ask their questions. I appreciate the allowance of several minutes of time to run through our arguments, but I certainly invite those questions, so please, I welcome them. The Circuit Court's summary judgment order in this matter should be reversed. Both of its findings are incorrect as a matter of law. The Circuit Court essentially made two. First, it held that Byline lacked standing to bring this cause of action. No, that's not correct. The Court's decision was based on its incorrect understanding of both the claims that were made below and also on the impact of a separate but related bankruptcy action proceeding on related claims to Byline's claims. The trial court found that Byline could not assert its claims because all of those claims belonged to the bankruptcy estate, but that's not accurate. Byline seeks to assert its own claims against Bank of America for breach of warranty. Byline has alleged that Bank of America improperly presented the cashier's checks at issue, in this case, for payment, warranting that the checks had been signed by the payee and credited into the account of that payee a man named Robert Kowalski. The checks hadn't. 32 of the 36 had a restrictive endorsement on them that Bank of America placed stating they were credited to the account of the within-named payee endorsement guaranteed by Bank of America. The payee was Mr. Kowalski. Mr. Kowalski did not have an account with Bank of America. The checks were deposited into his sister Jan Kowalski's account, not Robert Kowalski's as represented and warranted by Bank of America to Byline. That's why Byline has standing to bring its instant claims against Bank of America. That's where the trial court erred. The second error by the trial court was the trial court held that Bank of America lacks a duty to indemnify or defend Byline. Byline alleged two counts in its complaint. The first sought a declaratory judgment. The second alleged breaches of warranties under the UCC, the Illinois statutory provisions of the UCC. The circuit court said here that Byline's complaint failed to set forth facts showing duties that Bank of America owed to plaintiff. And also the circuit court found that Byline had failed to distinguish between the duties that Bank of America owed. None of that, again, is correct. The complaint specifically identified the statutes that are at issue. Again, they're provisions of the UCC, the presentment and transfer warranties that are applicable to banks in this situation. They're codified in Articles 3 and 4 of the UCC. The statutory provisions, and there are a lot of statutory provisions relevant in this case, but there is overlap with them, are 810 ILCS 5-3-416 and 417. And separately, 810 ILCS 5-4-207 and 208. Those establish the presentment and transfer warranties under the UCC that are at issue here. The trial court held that there was no duty under those provisions owed by Bank of America to Byline. That's simply not correct. The entire purpose of that statutory scheme is to establish that those duties do in fact exist and there are obligations owed between those banks under the statute. Now before I get into any more of the substance of the case, and I, again, invite the panel to ask questions, there is an important development that the panel needs to know about in this particular case, so much so that we haven't even had a chance to ask the court to take judicial notice of it. As the court is aware, there is a bankruptcy proceeding in this case, and there is an adversary proceeding that involves Mr. Kulloyan, who is acting as the trustee, so he's acting in the shoes of Mr. Kowalski, against Byline Bank. The bankruptcy court issued its memorandum decision in those proceedings two weeks ago, and as of last night, there has been no appeal. So that is a final decision now, and we have to provide that to this court. It was not final until midnight. With the court's permission, I'll advise the court of what those decisions in the memorandum opinion are, but also, to the extent the court would like supplemental briefing once we've been able to provide this memorandum opinion to the court, that may be necessary. So I want to make sure the court knows that this memorandum opinion was issued. The bankruptcy court made two findings. This court may be aware there were three claims alleged against Byline in those bankruptcy proceedings. It's a bit convoluted between the bankruptcy proceedings in this case. The bankruptcy court proceedings involved claims brought by the trustee against Byline alleging, most notably, that number one, Byline had violated the mandatory stay provisions of the Bankruptcy Act. Number two, conversion, a state law claim against Byline, saying that Byline had improperly funded these checks. And number three, there was a claim specifically alleging that the trustee could obtain the property because the funds that were paid are the property of the estate, so it was for turnover. The bankruptcy court found on count one that Byline Bank did not violate the automatic stay. That is a finding of law at this point, and it is final as of midnight. There has been no violation of the automatic stay by Byline Bank in the bankruptcy action. In count two, the common law conversion claim, the bankruptcy court found against Byline Bank and found that Byline Bank is liable for conversion for the full amount of the checks and only the checks. So that total is the number that you see in the papers in this case, $352,166.35. There was no additional penalty or fees or interest assessed in that amount. It's just the straight amount of the checks. And then as to count three, the turnover of property of the state, the bankruptcy court found in favor of Byline Bank and specifically determined that under Sections 549 and 550 of the Bankruptcy Code, the trustee cannot recover from the transferor bank. In this situation, in the bankruptcy action, the transferor bank is Byline Bank. Byline Bank is the entity that transferred the funds that the trustee was saying belonged to the bankruptcy estate. Instead, what the bankruptcy court specifically noted is that the trustee could have avoided the post-petition transfers. So those are the transfers that occurred after the bankruptcy filing. By bringing a claim against the transferor bank, the transferor bank is Bank of America. That claim was not made, but the bankruptcy court specifically said that is the only entity against whom the trustee could have made that claim, against the transferor bank. That would have come against Bank of America. Now again, that decision just came down. I appreciate that the court has not had a chance to review it. I certainly invite Mr. Dobik to discuss that decision as well. I'm sure he's seen it. We will be submitting it to the court. We are happy to provide supplemental briefing. But for what I think are obvious reasons, those determinations are particularly significant here. Why? Well, most importantly, because now there is a judicial determination that Byline Bank did not violate the automatic stay provision. And that is a significant piece of the argument that's been raised throughout this litigation by Bank of America. And it is an issue that seemed to confuse the trial court. The trial court seemed to believe that the bankruptcy action somehow precluded Byline Bank from attempting to assert its own claim, a separate and independent claim, brought against Bank of America. And that's not correct. Now, to understand how these sets of claims, the bankruptcy claims and the state court claims relate, it's worth taking a step back and understanding the construct of how these claims function. So Robert Kowalski, who was the debtor who eventually filed for bankruptcy protection, before he did that, he purchased these cashier's checks. And at that point, when you purchase a cashier's check, the cash is removed from the account of the individual and it's kept on the bank's general ledger. These are all pre-petition transactions. And we understand not only that that's the mechanical way that this works from sometimes our own experience, from the descriptions that are included in the facts of record, that's also explained in the Mid-America Bank case. That's the Illinois Supreme Court case that the parties have cited here, because the Illinois Supreme Court explained that, operationally, a cashier's check is functionally the equivalent of cash. And it's functionally the equivalent of cash because the cash, when it is purchased, is removed from the purchaser's account and kept on the bank ledger. Robert Kowalski purchased those cashier's checks before he went bankrupt. They were kept on the bank's general ledger, as they were required to be, and then the checks were negotiated post-bankruptcy filing. They were negotiated by either signature or, in some cases, no signature by Bank of America, and they were deposited into the account of someone named Jan Kowalski. Again, that's the debtor's sister, but that is not the payee on any of these checks. Now, setting aside the bankruptcy for a moment, in a normal action, a payee on a cashier's check, in that situation, where the cashier's check has been deposited into the account of someone who is not the payee, can bring a conversion claim. And you can bring a conversion claim against either the bank byline or against Bank of America for improperly negotiating those checks. In this situation, that's essentially what happened. The trustee who steps into the shoes of the payee filed a claim for conversion against Byline Bank and was successful. But Byline Bank, then, is not without recourse. Byline Bank, under the UCC, has the ability to bring a claim for breach of warranty against Bank of America, the entity that negotiated those checks. That's what happened here. The complicating layer for the circuit court was that there is a bankruptcy involved. But the bankruptcy does not impact on Byline Bank's claims against Bank of America's claims. It only speaks to who was allowed to bring a claim for conversion against Byline Bank. That was the trustee in the bankruptcy action. That's what happened here. So, with that in mind, let's look at Byline Bank's circuit court claims against Bank of America. Byline Bank filed a declaratory judgment action asking that Bank of America be found liable for any damages awarded in the trustee's suit because of improper payment of checks. And Byline sought a declaration that Bank of America would be found to be bound by the determinations of fact made in the trustee's action against Byline. That's the issue under 810 ILCS 5-3-119. I warned you, there are a lot of statutory provisions at issue in this case. That particular provision is the one by which Byline tendered its defense of the trustee action to Bank of America. It has the ability to do that. Bank of America declined to accept the tender. Bank of America has the right to do that. That's fine. But that's what precipitated the declaratory judgment action in the circuit court, which was brought pursuant to Illinois statute. To be sure, Byline continues to pursue that claim. There is some argument that Byline somehow waived that claim. It hasn't waived that claim. It's still a pending claim. But it is worth noting now, based on the decision that the bankruptcy court made, we know a few things that are pertinent to that declaratory judgment claim. We know the universe of damages. It's as claimed, $352,166.35. We know the basis of Byline's liability, common law conversion, not anything related to violations of the bankruptcy law. And we know that under 810 ILCS 5-3-119, Bank of America is bound by all of the bankruptcy court's findings of fact, because Bank of America elected not to accept that tender. And under the statute, if it elects not to accept the tender, Bank of America is bound by findings of fact in the second case, the related case. That's the bankruptcy trustee action. That's important for a variety of reasons. But for purposes of this conversation, it's particularly important because the bankruptcy court specifically found that the funds at issue were deposited into Jan Kowalski's account, not into an account that is owned by the payee on those checks. Mr. Kowalski did not have an account with Bank of America. Okay, you're already 15 minutes into it. So I thought it was convoluted enough before you started, but this makes it pretty interesting. It's like, I need to put on a Seventh Circuit robe or something here. It's true, Your Honor. Yeah. Questions from my colleagues? Justice Cobbs? Well, you surely did make it even more convoluted, and we're kind of at a disadvantage here that we're talking about a memorandum opinion that has not been reviewed by the court. And I'm not certain quite how to approach this without having reviewed that opinion or how it even relates to these proceedings. Whose property are these cashier's checks? So the cashier's checks were the property of Robert Kowalski. So Robert Kowalski is the person who purchased the cashier's checks. And then when he has possession of those cashier's checks, that's what I was talking about where the funds are segregated and Mr. Kowalski has the checks. Essentially, he's holding a stack of cash. When Mr. Kowalski filed for bankruptcy, those funds and those checks became the property of the bankruptcy estate. However, there is no way under Illinois law for Byline Bank to stop payment on those checks. And that's why you'll see in some of the case law, there's discussion about pre-petition and post-petition. When we're talking about pre-petition, we mean that the checks were purchased by the individual before he filed for bankruptcy. And there is case law that states that those checks can be negotiated, meaning they can be given to a bank and the bank gives you cash for them, even post-petition, meaning even after a bankruptcy action. That's because once they're purchased, they're not exactly in the stream of commerce, but they essentially can't be pulled back. It's not like a personal check, which would have to be declined if you filed for bankruptcy protection and then tried to negotiate a personal check. It's different because it's a cashier's check and the cashier's check functions as if it is cash. So you can't just arbitrarily hand it to the trustee unless the debtor hands those checks over to the trustee. And what's your authority for that, that they can't just be handed over to the trustee? Well, they could.  They could if the debtor did that. The debtor did not do that here. They could.  But that's not something that Bank of America, I'm sorry, that's not something that Byline Bank can control. That's the crux of that problem is... Yes, go ahead, Justice Pachinski. Okay. So Byline issued the cashier's checks before August 31st of 2017. And then on March 29th, 2018, Kowalski filed for bankruptcy and the trustee was appointed and the trustee sent a letter to Byline to freeze all of Kowalski's accounts. So is Byline saying that that letter didn't cover the cashier's checks because the cashier's checks were no longer in Byline's account and therefore Byline had no duty to tell the trustee, oh, wait a minute, he negotiated these cashier's checks. Keep your eye on those because they're floating out there in our ledger. So Byline have to tell the trustee that he bought these cashier's checks and they were just sort of floating out there, not in his account, but something that he could cash? He could still cash them. That's correct. I want to give the court an answer. It's a multi-step process. The first of all, the funds were all segregated out of Mr. Kowalski's account and were held on the bank's account. I think that's what the court meant. I just want to make sure we're clear on that. So the bank, they were on the bank's ledger at that point. Right, but he was the one who bought them. So didn't Byline have to tell the trustee, hey, this guy bought $300,000 worth of cashier's checks. You might want to check that. To the extent that the bank was able to do that, it could advise the bankruptcy trustee. Well, it didn't have a duty to do that. It did not. It did not have a duty to do that. And there are a few reasons for that. Where's the case on that? Have you got a case on that? This is the Mid-America case that I just had in front of me. And of course now can't find it. I read that case. And the reason the Mid-America Bank matters in this situation is because the Mid-America Bank establishes that under Illinois law, the bank, meaning Byline, could not have stopped payment on those checks. So say for the sake of your question, Justice Paczynski, Byline Bank advised the trustee, hey, there are these outstanding cashier's checks. Mechanically, Bank of America, I'm sorry, I keep saying that. Byline Bank could not have stopped payment on those cashier's checks. Oh, but wait a minute. But the question isn't whether Byline could have stopped payment. The question is whether they had a duty to disclose that there was these cashier's checks that were issued. We're clear that only the debtor, only Kowalski, I assume, could have been able to determine what was going to happen with the checks going forward. That's clear. UCC says Byline can't stop payment. That still doesn't answer Justice Paczynski's question. There is not an obligation for Byline Bank to advise the trustee. And in fact, that's part of the basis of the memorandum order. I recognize the court hasn't had a chance to look at it. We will submit that. That is why the bankruptcy court specifically found that Byline Bank did not violate the automatic stay and why the turnover order was not allowed as to Byline Bank. But there's one additional piece of information that I think is relevant, Justice Paczynski, to your question. What if Byline Bank had advised the trustee? In this particular situation, it wouldn't have made a difference because those checks were not deposited into one of Mr. Kowalski's accounts. So the reason the Byline Bank would have advised the trustee, hey, there are $300,000 worth of cashier's checks floating around. You should keep an eye out for them. You would be keeping an eye out for them because they would be negotiated into Mr. Kowalski's account. That's the only place you would be looking for them. You wouldn't be looking for them in somebody else's account. And in this particular case, the problem is that they were negotiated into a different account. If Mr. Kowalski had tried to negotiate those checks properly as the payee and tried to deposit them as was necessary into his account, then there would have been a stop payment order, or I shouldn't say stop payment order, but then there would have been an opportunity for the trustee to stop those checks from being funded. That's the problem here, is that at that point, there's nothing to stop when Bank of America negotiates those checks and deposits those funds into the account of someone else. There's no way for anybody to do anything about it other than Bank of America not accepting checks that are being deposited by a payee into a non-payee's account. That's the problem. Okay, let's wrap it up and then we'll hear from your opponent. All of those errors, fundamentally, speak to why the trial court's decision was wrong. Certainly, Byline Bank had standing to bring its claims, and certainly there is a problem under the UCC where Bank of America seems to very clearly have violated its warranties under the UCC. Because of that, this should be reversed to the circuit court. All right, Mr. Dobek. Good afternoon, panel. Justin Dobek on behalf of Appellate Bank of America. The judgment of the trial court should be affirmed. As counsel pointed out, we, and I think this is a bit of a unique situation, we recently obtained notice of the federal court's decision in the bankruptcy trustee's case. Counsel provided some information. There's more information, I think, that the justices should be aware of. Mainly that the federal court found that the cashier's checks are the property of the bankruptcy estate. In terms of the standing to bring this lawsuit, which was a large argument we had on summary judgment and also referenced in our appeal, it's clear that the federal court has extinguished Byline's arguments regarding their ownership of the cashier's checks. On page 11 even of the reply brief, Byline states, it is true that the cashier's checks, which were Mr. Kowalski's property, should have belonged to the bankruptcy estate. And the federal court, Your Honors, just recently affirmed that position. The federal court also found, and I think this clears up a lot of confusion in our case, that the federal court found that Jan Kowalski, who was a licensed attorney at the time, deposited the checks into her IOLTA account. Counsel's argument was that if Mr. Kowalski had deposited the checks into his own account, then there'd be no issue. Well, Ms. Kowalski, as an attorney, deposited them into her IOLTA cash equivalent. So Mr. Kowalski depositing his own account or his attorney depositing his funds into her IOLTA account are the same thing. Counsel also references the Mid-America case. The federal court found that inapplicable to the situation here. The Mid-America case says that a customer has no right to order the bank to stop paying a non-cashier's check. The case is silent as to whether or not the bank has any authority to do that or could do it. Bilan had knowledge of the debtor's bankruptcy case before it paid him. Turning to the trial court, properly noted that two of the checks, or I believe one of the checks, was actually signed and endorsed by Mr. Kowalski and still cleared. So the trial court noted that, well, if you did this one that was proper and you still did all the others, but what does it matter? And Bilan really didn't have a response for that. It doesn't really address it in its appeal. It's clear now given, and I know that I appreciate the fact that the justices haven't had a chance to review the federal court's position, the federal court's opinion, it's clear that the trustee has shown, or that the trustee had the right, the bankruptcy state had a right to the cashier's checks because they were the property at one time of the debtor and then of the estate. The fact that the automatic stay, it was not violated according to the federal court doesn't truly matter. What matters is that Bilan Bank did not have standing because the checks were the estate, or were the property of the estate. Looking at the warranties that Bilan Bank cites too, none of them are applicable here. The, going through them, and I know it's a lot of numbers, but 5-4-208 and 5-3-417 are presentment warranties. They have to deal with some type of forgery, forged signatures. That's not the question here. There's no question that there's no forged signatures that Robert Kowalski had taken those cashier's checks. And as we know now, Jan Kowalski deposited them into her I.O. Kowalski was a named individual on the checks. There's no indication or allegations of alterations, and there's no evidence of forged signatures. Looking at 5-4-207 and 5-3-416 transfer warranties, the person who's entitled to enforce the warranties and what the requirements are, that the person is entitled to enforce the warranty, the signatures are authentic, they're not altered, and they're not subject to claim and recoupment. And also the warrantor, being Bank of America, has no knowledge of any insolvency. As we know now, Ms. Kowalski, as an attorney, likely for her brother, deposited checks that he was a named payee, 8-10-ILCS-5-4-5, eliminated the need for signatures. And again, there's no allegations that the cashier's checks were altered. The UCC that is cited in Byline Bank's complaint are not applicable here. There is no evidence of any fraudulent transfers in terms of the checks themselves. Obviously, the underlying actions may have some malfeasance, but the checks themselves and the process in which they were deposited, there's no violation of the UCC. And with that, we'll rest on our briefs and open up to any questions that the justices may have. Questions? I just want to just be clear, Mr. Dobry, because we are really here at a disadvantage because we haven't had the opportunity to read this memorandum. But what has been made clear, I guess, in your statement is the property, the cashier checks, have been decided or declared the property of the bankruptcy estate. And I think up until now, that really has been kind of like an issue that's been in dispute. Is that correct? That's correct, Judge. So now that issue goes away if we are understanding the federal court's memorandum opinion. But now you're going beyond standing to the merits of the UCC claims. Does that really matter here for purposes of standing in the context of this bankruptcy proceeding? Does it really matter? In terms of the bankruptcy case, it does not. In terms of our case, Justice, at one point, the argument did matter. But once we received the standing decision from the federal court, if Fineline Bank can't establish standing, then there's no need to address any of the other issues. I merely highlighted for the courts that the UCCs that were cited throughout this case were not applicable, while the standing issue remained outstanding for a lack of a better term. Thank you. Thank you, Mr. DeWitt. Both sides are here by order to supply the court file with the court the decision that was recently rendered. And we will take the matter under advisement after we look at that too. There's no way we're going to have more oral argument after that. We're not going to have mas. We're going to have menos. We'll have less to deal with. So we will adjourn and take it under advisement and get back to you when we can sort it out. Justice Levin, I think Ms. Weiler might want to rebut what Mr. Dobek has said. Okay, go ahead, Ms. Weiler. You're muted. You're muted. Thank you, Justice Paczynski. Yes, I appreciate that. I will be very brief, I promise. I realize that's not always easy for lawyers. Standing, the standing issue, I just want to be very clear. The byline bank's standing is not entirely dependent on the bankruptcy's ownership of these checks. Byline bank's standing is based on its issue directly with Bank of America. The problem is that Bank of America improperly negotiated these checks that damaged byline bank. It's not dependent on the bankruptcy action. And there's one thing, and I will make sure that the court, when the court has the decision, the bankruptcy court, they'll be able to see it. The bankruptcy court specifically noted that courts have found the retention of funds received from an unauthorized transfer of property. I'm going to let the court read this line because it will be way too confusing if I try to explain it to the court. But the bottom line is that the court found there was no violation of the automatic stay by virtue of byline bank's willingness to fund these checks. And that's very important. And secondly, related to standing, the bottom line is that byline bank's claim exists separately and independently of the bankruptcy. I appreciate the court's willingness to let me address those in rebuttal. No, we're happy to hear it. Thank you very much. You're both very professional. I appreciate your briefs and just wish the decision of the federal court had happened earlier. That would have made this process a lot easier. And we spent a lot of time on this, but we'll take it under advising. We'll get back to you.